## SUPREME COURT.

### THADDEUS C. KINNIER agt. ABBY A. KINNIER.

An action for *divorce* by a husband against his wife, on the ground that the wife and her former husband obtained a decree of divorce by *collusion and fraud*, in another state from that of their domicil, and against the laws of the latter state, and that the plaintiff married the defendant on the faith of the representations that she had procured a valid divorce from her former husband, cannot be maintained.

If the parties to the divorce suit colluded together, and by such collusion fraudulently obtained the decree of divorce, neither of them could possibly avoid that decree; it is binding upon both.

Where both parties unite to practice a fraud, neither can be heard to seek relief against it; and as the plaintiff cannot be prejudiced if his marriage were lawful, he, a stranger, has no interest in the matter which would authorize him to impeach the judgment for fraud.

*New York Special Term, February,* 1868.

THIS action was brought to obtain a decree declaring void a marriage contract entered into between plaintiff and

defendant on the 28th of June, 1861. The defendant was married to one Pomeroy, in the state of Massachusetts, in 1848. It is charged that in 1855 Pomeroy left Massachusetts, went to Chicago and commenced a suit against his wife Abby. That the latter, by collusion with her husband, aided him in fraudulently obtaining a divorce in Illinois, &c. The defendant in this suit put in a demurrer to the complaint.

C. A. SEWARD, *for defendant.*

The defendant was married in Massachusetts, in 1848, to one Pomeroy.

In 1855, Pomeroy, with intent to evade the laws of Massachusetts, went to Chicago to procure a divorce, for causes which were not recognized by the laws of Massachusetts, and commenced a suit for that purpose. The defendant went to Chicago, and appeared in said suit, and put in an answer. The plaintiff put in no replication, as he was bound to do by law, whereby the answer stood confessed.

The parties, by collusion, on the 19th of September, 1855, procured to be entered and docketed a formal decree of divorce, which directed that an absolute divorce from matrimony be decreed, as by reference to said decree will more fully appear.

Such decree was fraudulently procured by unlawful collusion, and was and is a nullity by the laws of Massachuseets and Illinois, and may be inquired into by the courts of this state, and be declared null and void.

On the 28th of June, 1861, the plaintiff and defendant did attempt to contract a marriage.

The prayer is, that the Illinois decree may be adjudged to be fraudulent and void, and the attempted contract of the 28th of June, 1861, to be a nullity, and never to have had any legal existence; and that the defendant may be barred from dower.

There are two grounds of demurrer:

1. The court has no jurisdiction of the alleged cause of action.

2. The complaint is insufficient.

I. This action can only proceed under title 1, article 2, part 2, chapter 8 of the Revised Statutes (2 *R. S.* 142), entitled, "Of divorces on the ground of the nullity of the marriage contract." Apart from the authority thus conferred, this court has no jurisdiction whatever to annul a marriage contract. No such power is contained within its inherent jurisdiction. (*Burtis* agt. *Burtis, Hopk. Ch. R.* 559.) In *Pugnet* agt. *Phelps* (48 *Barb. S. C. R.* 566), Judge CLERKE said: "This court has no inherent power to declare a marriage contract void. Whatever power this court possesses is given by statute." This was followed in *Ives* agt. *Ives* (*MSS.*), and to the same effect is *Jarvis* agt. *Jarvis* (3 *Edw. Ch. R.* 462).

II. The force of this cannot be evaded by the allegation that the marriage contract between the parties hereto was only an "attempt," as it is denominated in the complaint, and not an actual contract, for the reason that the plaintiff has sued the defendant by his name and as his wife, and thereby admitted the contract *in extenso.*

III. If, therefore, the cause of action, as stated in the complaint, is not embraced within the provisions of the statute, this court has no jurisdiction, and the complaint must be dismissed.

IV. The complaint seeks to present two grounds of jurisdiction:

1st. Fraudulent representations by the defendant as to the validity of the Illinois divorce, and the grounds thereof.

2d. The absolute illegality of the Illinois divorce leaving in force the defendant's former marriage, and of course a former husband at the time of the second marriage.

1. The first ground is inconsequential and untenable.

(*a.*) No representations as to the divorce could have induced the second marriage. It would be insensible to say that the second marriage was contracted *because* of the divorce.

(*b.*) The defendant's allegation that the Illinois divorce was valid is as yet true.

(*c.*) The defendant's allegation that she procured the divorce from her former husband on the ground of his adultery, must, as it is not denied, be taken as the ground upon which she assented, as it appears from the complaint she did assent, to the judgment of divorce. By assenting to the judgment she did procure it, and the fact that her motive and ground for so doing was the adultery of the complainant is of no consequence, as his chastity is not averred.

(*d.*) The alleged representations are not of a kind which equity regards as constituting such fraud as requires the dissolution of the marriage contract. The frauds which equity relieves against are those which are perpetrated by force or duress, or those which concern property, or affect the rights of property (1 *Day's Cases in Error*, 111). If the defendant had said that her first husband was dead, she would have said no more than she did say, for he was dead to her by reason of his adultery and divorce; but even such a representation has been decided by this court not to be a ground for annulling a marriage contract, per SUTHERLAND, J., who said: "I find neither precedent nor principle for declaring a marriage void for fraud as to or in such a matter or thing." (*Clarke agt. Clarke*, 11 *Abb. Pr. R.* 230.)

(*e.*) The complaint is defective in not averring, as required by the statute (2 *R. S.* 143, § 31), that since the plaintiff acquired knowledge of what he denominates a "fraud, there has been no voluntary cohabitation between the parties."

(*f.*) It does not appear where the second marriage was contracted, nor that at the place of contract it was void, or that it could have been there avoided for the causes here alleged.

1. This court has no power to annul a marriage contracted out of this state.

2. If it has such power, then it can exercise it only in case of fraud, recognized as such at the place of contract.

Every presumption is against the pleader, and especially the presumption " *Omnia praesumuntur rite et sollen niter esse acta donec probetur in contrarium contra spoliatorem;*" and " *donec probetur; stabit praesumptio.*"

A marriage out of this state being assumed, its legality is presumed, and if legal at the place of contract, it is legal everywhere. (1 *Bishop on M. and D.* § 355.) No fraud at the place of contract being averred, this court has no jurisdiction to annul the marriage.

2d. The second alleged ground of jurisdiction also fails.

1. This court has no jurisdiction to set aside the judgment rendered by a court of record in a sister state.

(*a.*) Every judgment, however entered, is valid until vacated. This suit concedes that the judgment is as yet valid in Illinois.

(*b.*) It is therefore within the constitutional protection as to its force and validity here. (*Const U. S. Art.* 4, § 1.)

In *Bicknell agt. Field* (8 *Paige*, 445), the chancellor said, "It is at least doubtful whether any court in this state has any right or power to inquire into the regularity of a judgment recovered in one of the superior courts of a sister state, after personal service of the process upon the party against whom such judgment was obtained.

Kinnier agt. Kinnier.

It would not be giving full faith and credit to the record to .permit it to be alleged, and shown that the judgment record was made up and filed fraudulently by the clerk of the court and without authority." What the party enjoined cannot do, *a fortiori* a stranger cannot do. ( *Westervelt* agt. *Lewis*, 2 *McLean*, 511.)

" If the foreign court which rendered the judgment," said PARSONS, C. J,, in *Bissell* agt. *Briggs* (2 *Mass.* 440) " had jurisdiction of the cause, the regularity of the proceedings is not to be drawn into question." " The courts of one state," said the court in *Rogers* agt. *Rogers* (15 *B. Mon.* 364), " cannot change or alter the decisions of another on the ground that they are erroneous."

2. The judgment remaining unreversed, even the parties could not, either in Illinois or in this state, maintain an independent suit to annul it. ( *Hood* agt. *Hood*, 11 *Allen*, 200.) The validity of the judgment can be tested only by appeal in the suit in which it was rendered. ( *Bicknell* agt. *Field, supra; Burlen* agt. *Shannon*, 3 *Gray*, 388.)

3. The old maxim, *"Res judicata pro veritate accepitur,"* applies here as forcibly upon every ground as it ever can apply, and defeats this action. The law proceed-ing upon the maxim, *" Interest reipublicæ ut sit finis litium,"* regards such judgments as conclusive. ( *Phillips on Ev., Cowen and Hills' Notes, Part* 2, 824, 946.)

4. One reason only can be assigned for declaring a judgment void, and that is that the court by which it was rendered had no jurisdiction of the subject matter or of the parties. Such reason does not exist in the present case, and has not, of course, been here assigned.

5. The circuit court of Cook county, having had jurisdiction both of the subject matter and of the parties, its conduct of the cause prior to the judgment is a matter with which it is alone concerned; and whether it was erroneous or not, this court cannot inquire into it. Where the record shows jurisdiction of the subject matter and the person, the judgment of the court cannot be questioned for errors of substance or form intervening. ( *Lane* agt. *Bommelmann*, 17 *Ill.* 95.)

If a court has jurisdiction of the subject matter and of the person, a judgment or decree rendered by it, however irregular or erroneous, will not be void, but merely voidable. ( *Walker* agt. *Rogan*, 1 *Wis.* 597.) Such errors can be taken advantage of only on appeal ( *Farrington* agt. *King*, 1 *Bradford*, 182), and the judgment is conclusive until reversed, ( *De Laney* agt. *Reed,* 4 *Iowa*, 292 ; *Cole* agt. *Butler*, 43 *Maine*, 401 ; *Kelley* agt. *Mize*, 3 *Smeed*, 59 ; *Smith* agt. *Knowlton*, 11 *New Hamp.* 192,) though the error appear on the face of the record ( *Farmers' L. & T. Co.* agt. *Kinney*, 6 *McLean*, 1) and though the judgment was obtained by fraud ( *Simms* agt. *Slacum*, 3 *Cranch*, 300) and though it is apparent that the court erred as to the law ( *Preston* agt. *Clark*, 9 *Geo.* 244.)

6. If the judgment was fraudulently procured, it cannot be impeached for that reason in this collateral action. In *Tilford* agt. *Barney* (1 *Iowa*, 575) the court said " a judgment cannot be impeached collaterally for fraud." In *The People* agt. *Downing* (4 *Sandf. S. C. R.* 193) OAKLER, Ch. J. said: " The decree was obtained in a competent court, and cannot be impeached in a collateral proceeding. There is a way in which a decree, if it has been obtained through fraud, may be vacated, but that must be by a direct application for the purpose. No judgment rendered in a court of competent jurisdiction can be impeached in a collateral matter for fraud." To the same effect is *Lamprey* agt. *Nudd*, 9 *Foster* (*N. H.*), 229 and *Wesson* agt. *Chamberlain* (3 *Comst.* 332) in which the court said that a " judgment is not open to attack upon the merits in a collateral action."

7. The most that can be said against the judgment in this case is, that the court irregularly disregarded the answer and rendered judgment *non obstante.* In *Diehl* agt. *Page* (2 *Green, Ch* 143) the court said. " a judgment in a case in which the court

rendering it had jurisdiction cannot, though irregular and not according. to the statute authorizing it, be impeached by a stranger, collaterally."

The same point has been as strongly enunciated and decided in the following cases: *Maxwell* agt. *Pittinger*, 2 *Green*, 156; *Anderson* agt. *Fry*, 6 *Indiana R.* 76; *State* agt. *Connolly*, 6 *Iredell*, 243; *Miller* agt. *Barkeloo*, 3 *Eng.* 318; *Brown* agt. *Byrd*, *Id.* 384; *Cropsey* agt. *McKinney*, 30 *Barb.* 48; *Bumsteed* agt. *Reed*, 31 *Barb. S. C. R.* 669, and cases there cited; *Barron* agt. *Tait*, 18 *Ala.* 668; *Mobley* agt. *Mobley*, 9 *Geo.* 247; *Wright* agt. *Marsh*, 2 *Greene*: 94; *Ranoul* agt. *Griffie*, 3 *Md.* 54; *Mills* agt. *Dickson*. 6 *Rich.* 487; *Vanderpoel* agt. *Van Valkenburgh*, 2 *Selden*, 190, *Cyphert* agt. *McClure*, 22 *Penn.* 195. The plaintiff. therefore cannot attack the judgment rendered in Illinois.

8. But there was no irregularity in the rendition of the judgment.

(1.) The question of the immobility of the answer was one of rule and practice, and if after the answer was filed the defendant was called and made no answer, then the court could permit the plaintiff to withdraw the answer, or could treat the defendant as in default and order, as it did, judgment *pro confesso*. The practice is as old as the court of chancery. (2 *Daniels*, *Ch. P.* 695.)

(2.) It is always competent to withdraw an answer, and if counsel state in open court that the answer is withdrawn, the court proceeds to render judgment as in case of default.

(3.) The judgment record is referred to in the complaint, and it is therefore before the court. It appears upon an inspection to have been rendered without dissent and by default after personal service.

This is a matter purely within the control of the Illinois court, and the decree is to be regarded as having been rendered by consent and after trial, and, as such, is not subject to review. (*Wells* agt. *Martin*, 1 *Ohio*, 386.) The defendant could waive the privileges springing from the filing of her answer, as she could have waived a jury trial here, and by her silence she is to be deemed to have waived them. (*Bostwick* agt. *Perkins*, 4 *Geo.* 47.) This is especially so in view of the allegation in the complaint that the decree was by collusion.

V. The complaint proceeds upon a mistaken view of the law. In order to annul a judgment, a direct action of nullity must be instituted in the same court in which the judgment was rendered. No other court is competent to vacate the judgment. Where, however, a party to a void judgment seeks to avail himself of it, and makes it the basis of an affirmative action, then, and not till then, can the defendant attack it. (*Clark* agt. *Herbert*, 15 *La. An.* 279.) The defendant in this suit is not using the Illinois judgment for any purpose, and until she does bring an action upon it, this court has no power to inquire into it.

VI. The cause of action, as set forth in the complaint, does not fall within any one of the four subdivisions contained in the statute.

(a.) It is not for alleged minority.

(b.) Nor that there is a former husband of the defendant now living, her marriage with whom is now in force.

(c.) Nor that the plaintiff was an idiot or a lunatic.

(d.) Nor that the consent of the plaintiff was procured by force or fraud.

The cause of action is disclosed by the relief now sought, which is

(1.) Declare the Illinois divorce, rendered in December, 1855, to be illegal.

(2. Declare that in consequence of such declaration, the former marriage of the defendant with her former husband is reinstated in full force.

(3.) Declare retroactively that it was so reinstated and in force in June, 1861, when the plaintiff married the defendant, notwithstanding the Illinois divorce was then unreversed and not vacated,

(4.) Declare that in June, 1861, when the parties to this suit were married, the defendant's former husband was living, and that her marriage with such former husband was then in force, and that she has been guilty of bigamy.

(5.) Declare that in consequence of the decision in this suit a marriage lawfully contracted out of this state is made illegal.

(6.) And finally declare such marriage null and the defendant barred from dower in real estate, which the plaintiff has not yet acquired.

This court has never claimed, or exercised, or possessed any jurisdiction to grant any such relief (*Pugnet* agt. *Phelps*, 48 *Barb. S. C. R.* 566). Even if it had, morality and decency alike require that it should refuse to exercise it in the present case (*Singer* agt. *Singer*, 41 *Barb. S. C. R.* 140).

VII. The complaint should be dismissed.


G. W. PARSONS, *for plaintiff.*


CARDOZO, J.   The allegation in the complaint that the parties resorted to Illinois to obtain a decree of divorce in fraud or violation of the laws of the place of their domicil, I think unimportant here. I can very well see how the state of Massachusetts might complain that its citizens had violated their allegiance to it, and how the courts of that state might disregard the judgment of another jurisdiction which granted a divorce to persons domiciled in the former state, who could not have obtained such a decree in the tribunals of that state.   But I do not know of any principle, and have not been referred to any decision which sustains the doctrine that the courts of this state should thus protect the sovereign rights of Massachusetts.   The complaint does not question the jurisdiction of the Illinois court over the subject matter, and it shows that that tribunal acquired jurisdiction of the persons of the parties—of the plaintiff by his bringing the action, and of the defendant by her appearing and answering the bill.   Whether the rest of the complaint be deemed to charge in effect only that certain irregularities were had in the progress of the suit, or whether it sufficiently alleges that the parties practiced a fraud on the court, and thus procured the decree, will not be material to determine.   If the former be the true construction, then it is enough to say that mere irregularity could not affect the

decree, and that the plaintiff here, a stranger to that litigation, cannot be heard to question the regularity of the proceedings of that suit. He may raise jurisdictional questions, but not mere points of regularity in practice. If, however, the right view of the pleading be the latter one, above mentioned, and if the courts of this state can entertain a suit to annul the decree of a court of another state on the ground of fraud, yet this plaintiff is not in a position to ask any such relief. No one can claim to have a judgment or a deed avoided for fraud, unless it injuriously affects him, and such is not the case with this plaintiff. Giving the complaint the most liberal construction for the plaintiff, it charges that the representations upon the faith of which the plaintiff married the defendant, was that she "had procured a valid divorce" from her former husband. In other words, that this plaintiff and she might lawfully be married. Now if this be true, the plaintiff has not been harmed by this deception, and even if the representations were inaccurate, he will not be entitled to annul the marriage. The complaint does not dispute but that if the decree of divorce stands the defendant would be at liberty to marry, and that, therefore, must be assumed, but it avers that the parties to the divorce suit colluded together, and by such collusion fraudulently obtained the judgment. If that be so, neither of those parties could possibly avoid that decree. (*Bishop on Marriage and Div.* 706.) It is binding upon both of them, and the marriage between this plaintiff and the defendant was valid. Where both parties unite to practice a fraud, neither can be heard to seek relief against it; and as the plaintiff cannot be prejudiced if his marriage were lawful, he, a stranger, has no interest in the matter which would authorize him to impeach the judgment for that fraud. That his feelings or prejudices might have revolted at marrying a woman under such circumstances, gives him no standing in court. (*Clarke* agt. *Clarke*, 11 *Abbott, P. R.* 230.) Without adverting to other views which lead me to think that this complaint can

not be sustained, enough has been said to show that, in my opinion, the demurrer is well taken, and that there must be judgment thereon for the defendant, with costs.